# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PING MAY MARITIME LLC, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION |
| | * | |
| v. | * | NO.: 20-2953 |
| | * | |
| JIANGSU STEAMSHIP PTE. LTD; | * | SECTION: |
| JIANGSU STEAMSHIP CO. LTD; | * | |
| JIANGSU HUAXI OCEAN SHIPPING | * | JUDGE: |
| MANAGEMENT CO. LTD; and | * | |
| SPRING SUNSHINE SHIPPING LTD, | * | MAGISTRATE JUDGE: |
| | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*

## VERIFIED COMPLAINT

Plaintiff Ping May Maritime LLC ("Plaintiff") files this Verified Complaint against Defendants Jiangsu Steamship Pte Ltd ("Jiangsu Singapore"), Jiangsu Steamship Co. Ltd ("Jiangsu Hong Kong"), Jiangsu Huaxi Ocean Shipping Management Co. Ltd ("Jiangsu Management") and Spring Sunshine Shipping Ltd ("Spring Sunshine") (together, the "Defendants"), and alleges upon information and belief as follows:

## SUBJECT MATTER JURISDICTION

1.      This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333, and is brought to obtain security for a maritime arbitration pursuant to 9 U.S.C. §8.

## PARTIES

2.      At all times relevant to this action, Plaintiff was, and still is, a foreign business entity duly organized and operating under the laws of the Marshall Islands. Plaintiff is principally

active in providing dry bulk shipping services. At all material times, Plaintiff was the registered owner of the M/V PING MAY (IMO 9469649) (hereinafter the "Vessel").

3.      Jiangsu Singapore is a foreign business entity organized and existing under the laws of Singapore, with a registered address at 8 Eu Tong Sen Street #15-96, The Central Singapore, 059818. At all material times, Jiangsu Singapore was the time charterer of the Vessel under a charterparty dated May 1, 2020, on the NYPE 1946 form, as more fully described below.

4.      Jiangsu Hong Kong is a foreign business entity organized and existing under the laws of Hong Kong, with a registered address at Unit 1001, 10/F., Edward Wong Tower, 910 Cheung Sha Wan Road, Lai Chi Kok, Kln, Hong Kong.

5.      Jiangsu Management is a foreign business entity organized and existing under the laws of China, with a registered address at 88, Zhonghua Road in Zhangjiagang Free Trade Zone, Zhangjiagang, Jiangsu, China. At all material times, Jiangsu Management was listed as the commercial and ship manager of the M/V SPRING SUNSHINE (IMO 9628049).

6.      Spring Sunshine is a foreign business entity organized and existing under the laws of Hong Kong, with the same registered address as Jiangsu Hong Kong – Unit 1001, 10/F., Edward Wong Tower, 910 Cheung Sha Wan Road, Lai Chi Kok, Kln, Hong Kong. At all material times, Spring Sunshine was the registered owner of the M/V SPRING SUNSHINE.

7.      On information and belief, at all material times and for reasons set forth below, Spring Sunshine held the title to the M/V SPRING SUNSHINE as a mere agent for Jiangsu Singapore, the latter being the true or ultimate beneficial owner of the M/V SPRING SUNSHINE.

8.      Further and alternatively, on information and belief, at all material times and for reasons further set forth below, Jiangsu Singapore, Jiangsu Hong Kong, Jiangsu Management

and Spring Sunshine have constituted alter egos of one another such that they should be treated as a single entity for the purpose of the requested attachment sought herein.

**FACTS**

**The Charterparty**

9.      On or about May 1, 2020, Plaintiff agreed to let and Jiangsu Singapore agreed to hire the Vessel. A formal charterparty was subsequently produced, evidencing the terms of the agreement between the parties (the "Charterparty"), a true and accurate copy of which is submitted herewith as Exhibit A and made a part hereof.

10.     Pursuant to the Charterparty, Jiangsu Singapore hired the Vessel "for one time charter trip" with bulk coal "via Australia to China/South Korea/Taiwan" (*Exhibit A, lines 14-15*).

11.     Pursuant to the Charterparty, Jiangsu Singapore was required to redeliver the Vessel between June 15 and July 5, 2020 (*Exhibit A, line 15*).

12.     On May 14, 2020, Plaintiff delivered the Vessel to Jiangsu Singapore in accordance with the Charterparty.

13.     The Vessel proceeded to Australia, where it loaded two parcels of Australian coal covered by two bills of lading during June 2020.

14.     In accordance with Jiangsu Singapore's orders, the Vessel then proceeded to the port of Jingtang, China, arriving on or about June 30, 2020. As of the time of this filing, the Vessel remains at the port of Jingtang, China. Jiangsu Singapore's onward customer's cargo remains on board the Vessel. Through no fault of Plaintiff, Plaintiff is exposed by Jiangsu Singapore's breach and conduct not only to enormous losses in respect of future earnings, but

additionally ongoing costs and prospective losses occasioned by the wrongful and/or negligent conduct of Jiangsu Singapore.

15.     Further, pursuant to Clause 47 of the Charterparty, rather than purchasing all bunker fuel on board the Vessel on delivery, Jiangsu Singapore purchased certain bunker fuel estimated in their opinion to be the amount required for the voyage from Australia to China.

16.     Jiangsu Singapore advised an estimate of 1220 metric tons ("mt") of Very Low Sulphur Fuel Oil ("VLSFO") for the voyage and purchased only 1220 mt VLSFO and 0 mt Low Sulphur Marine Gas Oil ("LSMGO") on delivery. Plaintiff retained title to the remaining bunkers on board the Vessel, being 399.08 mt VLSFO and 124.2 mt LSMGO.

17.     Jiangsu Singapore later purported to purchase a further 140.27 mt VLSFO at a price of USD250/mt. Plaintiff acknowledges receipt of the payment of USD35,067.50, but deny that this payment represented the correct price for the subject fuel bunkers in accordance with the Charterparty.

18.     Pursuant to Clause 2 of the Charterparty, Jiangsu Singapore agreed to pay for bunker fuel. In total, between the commencement of the Charterparty and the date of termination of the Charterparty (October 23, 2020, as set out below), Jiangsu Singapore used 1619.08 mt VLSFO and 6.1 mt LSMGO. Of that bunker fuel, 399.08 mt VLSFO and 6.1 mt LSMGO belonged to Owners and Jiangsu Singapore has not paid the price for this bunker fuel.

19.     The price of the bunker fuel is not fixed under the terms of the Charterparty (save for fuel purchased on delivery and on re-delivery). In accordance with their agreement to pay for the bunker fuel, Jiangsu Singapore is required to pay a reasonable price as a matter of English law (which is called for under the Charterparty). Therefore, pursuant to the agreement of the

parties, said reasonable price for the bunker fuel should be calculated at the prevailing market rate at the place of re-delivery on or about the contractual re-delivery date.

20.     On September 21, 2020, Plaintiff initiated London arbitration for Jiangsu Singapore's breaches of the Charterparty, as required by the agreement of the parties and described more fully below.

21.     By a notice dated October 20, 2020, Jiangsu Singapore alleged that the Charterparty was frustrated as a matter of English law (*Exhibit B, Page 2*). This notice was wrongful, for the following reasons (without limitation):

    a.   Under the terms of the Charterparty, Jiangsu Singapore was entitled to discharge the cargo and re-deliver the Vessel in China, Taiwan or South Korea. There is no suggestion that the difficulties in discharging the cargo at Jingtang, China would have been faced in either Taiwan or South Korea. Performance of the Charterparty was therefore not rendered impossible or more difficult than envisaged by the strict contractual terms due to the problems at Jingtang, China;

    b.   Jiangsu Singapore nominated a voyage for the delivery of Australian coal to a Chinese discharge port. There have been a number of import restrictions in China against Australian coal, since early 2019 and Jiangsu Singapore ought reasonably have been aware that delay was a possibility. The issues in discharging were therefore caused by the actions of Jiangsu Singapore in nominating a discharge of coal in China, or alternatively are otherwise Jiangsu Singapore's responsibility under the Charterparty; and

    c.   The cargo could have been and ought to have been arranged for a discharge at another discharge port in China (or elsewhere in the delivery range) on arrival at

Jingtang or shortly thereafter. Such a discharge could have been effected and the Vessel could have been re-delivered on time following such discharge. Jiangsu Singapore's decision not to seek alternative arrangements to discharge within the contractual delivery range therefore caused the delay.

22.     By a responsive notice dated October 23, 2020, Plaintiff terminated the Charterparty in accordance with their rights under English law (*Exhibit B, Page 1*). By that notice, Plaintiff rejected Jiangsu Singapore's alleged notice of frustration, which was itself a repudiation of the Charterparty. Plaintiff accepted the wrongful frustration as a repudiatory breach of the Charterparty and elected to terminate the Charterparty.

**Jiangsu Singapore's Breaches of the Charterparty and Wrongful Acts with respect to the Charterparty**

23.     Without limitation to Plaintiff's right and ability to bring claims for any and all breaches of the Charterparty in the London arbitration, Plaintiff alleges the following breaches of the Charterparty.

24.     In breach of its obligations under the Charterparty, Jiangsu Singapore failed to redeliver the Vessel to Plaintiff by July 5, 2020 (*Exhibit A, line 15*).

25.     In breach of its obligation to make timely payment of hire, Jiangsu Singapore failed to make any payment of hire for the use of the Vessel after October 16, 2020 (*Exhibit A, cl. 5;62*);

26.     In breach of their obligation to pay for bunker fuel, Jiangsu Singapore has failed to pay a reasonable price for the bunker fuel consumed (*Exhibit A, cl. 2*).

27.     By their notice of October 20, 2020, Jiangsu Singapore evinced a clear intention not to be bound by the terms of the Charterparty (*Exhibit B, Page 2*). As a matter of English law,

that is a renunciation of the Charterparty, which is a repudiatory breach entitling Plaintiff to terminate the Charterparty and claim damages.

28.     Further, by their renunciation and repudiation of the Charterparty, Jiangsu Singapore is attempting simply to walk away from the Vessel, which remains loaded with their onward customer's cargo and leaves Plaintiff, as the Vessel's owner, saddled with ongoing expenses. This amounts to, variously: an abandonment of property in a grossly negligent and/or intentionally wrongful manner; and a *prima facie* tort. Those actions can be attributed to the Defendants globally, rather than Jiangsu Singapore in a limited manner, by the commonality of ownership, directorships and employees set out in detail below.

### Plaintiffs' Losses Caused by Jiangsu Singapore's Breaches of the Charterparty

*Loss of Earnings*

29.     In accordance with the terms of the Charterparty, the agreed rate of hire was USD6,800 per day for the first 45 days, and then USD8,500 per day (less 3.75% address commission) for the remaining contractual duration of the Charterparty (*Exhibit A, Page 33*). Jiangsu Singapore continued to make payments at this rate for the period between July 5, 2020 and October 16, 2020. Jiangsu Singapore paid no hire thereafter.

30.     As a matter of English law, Plaintiff is entitled to the difference between: (a) the actual amount paid by Jiangsu Singapore by way of hire payments; and (b) the market rate for the Vessel, for the period between the date on which the Vessel ought to have been re-delivered and the date on which the Vessel was actually re-delivered, or alternatively the date on which the Charterparty was terminated.

31.     Had the Vessel been redelivered on or before July 5, 2020, Plaintiff would have been able to enter into a Charterparty of about 6 months duration at a rate of USD28,750 (see the

figure for the week of July 3, 2020 in *Exhibit C*). Between July 5, 2020 and the date of termination of the Charterparty, that amounts to a total loss of earnings of USD3,191,250 (the daily rate of the replacement fixture, multiplied over 111 days). Jiangsu Singapore has in fact paid USD842,668.75 in hire across this period, being a daily amount of USD8,181.25 between July 6, 2020 and October 16, 2020 (inclusive). Jiangsu Singapore are liable in damages for the difference, which stands at USD2,348,581.25 at a minimum.

32.     Further, as a result of Jiangsu Singapore's repudiation of the Charterparty, the Vessel remains at Jingtang Port holding a cargo of Australian coal. On Jiangsu Singapore's own admission, there is no prospect to discharge the cargo within 2020 (*Exhibit B, Page 2*). On that assurance and without any admission, it is reasonable to anticipate a delivery not before January 31, 2021, as one would expect there to be a number of days and weeks between the alleged import quota being reset, and the discharge of the Vessel. By January 31, 2021, 101 days will have elapsed from the date of termination, during which the Vessel will be awaiting berth at Jingtang Port, without remuneration. That is at a minimum a further USD2,903,750 in loss of earnings against the market rate that could have been obtained had Jiangsu Singapore re-delivered the Vessel in accordance with their Charterparty obligations.

33.     Plaintiff therefore has suffered loss or damage or reasonably anticipates suffering loss or damage in loss of earnings currently standing at USD5,252,331.25. Plaintiff expressly reserves its right to raise this figure higher, should the final discharge of the cargo ultimately take place on or after January 1, 2021, or should there be a change in the market rate for the Vessel.

*Underpaid Bunker Fuel Costs*

34.     The prevailing market rate for the bunker fuel, according to Platts Shanghai prices as of July 3, 2020 was VLSFO at USD339/mt; and LSMGO at USD407/mt. As a matter of

custom, the price of bunker fuel in Jingtang, China is normally USD10/mt higher than the Platts Shanghai figure. Plaintiff avers that a reasonable price for the bunker fuel was therefore: VLSFO at USD349/mt; and LSMGO at USD417/mt, and that these amounts represent the correct price in respect of Jiangsu Singapore's agreement to buy bunker fuel from Plaintiff pursuant to Clause 2 of the Charterparty.

35.    As of the date of termination of the Charterparty, Jiangsu Singapore had burned but not paid for 399.08mt VLSFO and 6.1mt LSMGO. Plaintiff claims for this fuel in an amount as follows:

      a.   VLSFO at a rate of USD349/mt, for 399.08mt of bunker fuel, being a total of USD139,278.92; and

      b.   LSMGO at a rate of USD417/mt, for 6.1mt of bunker fuel, being a total of USD2,543.70; LESS

      c.   Amounts already paid of USD35,067.50.

36.    Plaintiff therefore claims for an additional USD106,755.12 in respect of bunker fuel costs. Plaintiff reserves its right to demand further amounts in respect of further claims for bunkers consumed waiting at port between now and the discharge of the cargo.

*Additional Port Dues Unpaid*

37.    Jiangsu Singapore's unlawful act in repudiating the Charterparty while their onward customer's cargo remains on board the Vessel has also exposed Plaintiff to ongoing port costs. As at January 31, 2020, it is anticipated that total port dues in an amount of USD367,371 will have been incurred. Jiangsu Singapore has paid USD62,950 in respect of port dues, leaving a remaining USD304,421 outstanding for Jiangsu Singapore's account.

*Extension from Classification Society*

38.     As a result of Jiangsu Singapore's breach of their obligation to redeliver the Vessel between June 15 and July 5 2020, Plaintiff was unable to complete required classification surveys necessary to maintain proper registrations and insurance, and have been required to seek an extension from their classification society. The costs of obtaining this extension amounted to USD4,534.78 (*Exhibit D*).

*Reservation of further losses*

39.     Plaintiff notes that the quantification of its losses from Jiangsu Singapore's various breaches remains ongoing. Plaintiff reserves its right to supplement the above with further loss or damage, including but not limited to Jiangsu Singapore's failure to pay all necessary port dues, agent fees or other dues.

*Total losses*

40.     As at today's date, Plaintiff has suffered loss or damage, or reasonably anticipates suffering loss or damage, in a total amount of USD5,668,042.15 exclusive of interest and costs. This amount continues to rise, and Plaintiff reserves its position to demand further amounts.

## The London Arbitration

41.     The Charterparty is subject to English law and disputes are subject to arbitration in London. Accordingly, on September 21, 2020, Plaintiff commenced a London arbitration against Jiangsu Singapore by serving a notice of arbitration on Jiangsu Singapore (*Exhibit E*).

42.     Claim Submissions have been served in those arbitration proceedings.[1]

---

[1] This Verified Complaint is in no way intended to limit the claims included in those proceedings or to restrict Plaintiff's rights or ability to amend (or seek to amend) its arbitral Claim Submissions or otherwise, to introduce new claims in the arbitration, not yet pleaded, detailed, particularized or quantified (whether those claims have already accrued or not). Plaintiff's position in the arbitration is reserved.

43.     On October 7, 2020, Plaintiff requested Jiangsu Singapore to provide security on a voluntary basis in an amount of USD3,000,000 to cover the increasing losses, interest, and legal costs as at that date.  Plaintiff's request was restated on October 23, 2020, following informal discussions about the provision of security (Exhibit B).  That message asked for an urgent response – none was given.  No such security has been provided as of the date of this complaint, which caused Plaintiff to seek the attachment requested herein.

**Jiangsu Singapore are the True Owners of the Vessel**

44.     On information and belief, Jiangsu Singapore is the true Owner of the Vessel, and Spring Sunshine merely holds the registered ownership to the M/V SPRING SUNSHINE as Jiangsu Singapore's agent. In an introductory document from Jiangsu Singapore ("the Introduction"), sent to Plaintiff on or about April 29, 2020 by brokers on behalf of Jiangsu Singapore seeking to negotiate the Charterparty (*Exhibit F; Exhibit F.1*), Jiangsu Singapore made the following representations:

    a. The document is headed on each page with Jiangsu Singapore's full style, a very clear and specific reference to Jiangsu Singapore (and not any wider "Jiangsu group");

    b. The first sentence on the first page then draws a distinction between "JiangSu Steamship" (a clear reference to Jiangsu Singapore) and the wider "JiangSu HuaXi Group". It is implicit in this distinction that the content of the Introduction document refers to Jiangsu Singapore specifically, and not the wider group;

    c. The second paragraph of the first page then refers to the "**company** fleet" (emphasis supplied) - a specific reference to Jiangsu Singapore's fleet;

d. The final sentence of the second paragraph then refers to Jiangsu Singapore's "11 ocean-going bulk carriers", a clear reference to the vessels listed on page 3 of the Introduction;

e. On page 2 of the Introduction, under the heading "Business Scope", Jiangsu Singapore is again clearly and specifically held out as a "ship owner";

f. Page 3 of the Introduction then contains a list of the fleet owned by Jiangsu Singapore. This list includes the M/V SPRING SUNSHINE. The preceding pages represent Jiangsu Singapore as the owner of a fleet of vessels as a specified, individual entity and as distinct from any broader Jiangsu group.

g. The vessel list states that it is "**Our Own** Bulk Fleet List" (emphasis supplied).

45.    As a result of the foregoing, Jiangsu Singapore held itself out as the owner of the M/V SPRING SUNSHINE. Spring Sunshine serves no role greater than that of agent of Jiangsu Singapore.

46.    Alternatively, the Defendants are estopped from now arguing that Jiangsu Singapore is not the owner of the M/V SPRING SUNSHINE, as follows:

a. Jiangsu Singapore made a clear representation of fact that they are the owners of the M/V SPRING SUNSHINE by way of the Introduction (as described above);

b. It was clearly intended that Plaintiff was to rely on that representation, because it was made in advanced negotiations relating to a charterparty fixture between Plaintiff and Jiangsu Singapore;

c. It was reasonable for Plaintiff to rely on the representations in the Introduction. These were made in an official document, including Jiangsu Singapore's full

style, and with numerous specific references to Jiangsu Singapore's particular ownership of, inter alia, the M/V SPRING SUNSHINE;

d. It was to Plaintiff's detriment to rely on this representation, because Jiangsu Singapore is now refusing to provide security for Plaintiff's claims against Jiangsu Singapore;

47. For the reasons set out in the "Alter Ego Allegations" section below, all Defendants are estopped on the above basis from arguing that Jiangsu Singapore is not the true owner of the M/V SPRING SUNSHINE. In particular, the commonality of the directorships of Yixin Gao and Sujun Lyu (and, in the case of Yixin Gao, the commonality of ownership) of both Spring Sunshine and Jiangsu Singapore makes it clear that the representations made on behalf of Jiangsu Singapore in the Introduction were equally made by Spring Sunshine, or alternatively were made with the express or implied consent of Spring Sunshine.

## Alter Ego Allegations

### Complete Domination and Control

48. Further and alternatively, Defendants Jiangsu Singapore, Jiangsu Hong Kong, Jiangsu Management and Spring Sunshine have so blurred the lines between purportedly separate existences that they should be treated as alter ego entities.

49. Defendants have abused the corporate form in order to perpetrate a fraud, injustice or other wrongdoing that injured Plaintiff, as more fully described herein.

50. On information and belief, Jiangsu Hong Kong is a Hong Kong entity operating a fleet of 10-15 vessels and effectively controlling Defendants Jiangsu Singapore, Jiangsu Management, and Spring Sunshine. Jiangsu Management is the ship management department of Jiangsu Hong Kong. Jiangsu Singapore is the chartering department of Jiangsu Hong Kong.

Spring Sunshine is a one-ship owning shell company intended only to hold registered title to the M/V SPRING SUNSHINE.

51.     On information and belief, the Defendants share overlapping ownership and officers. The grounds for such information and belief include the following:

    a.   According to the Hong Kong, Chinese and Singapore company registries, all shares in Jiangsu Singapore are owned equally by two Chinese nationals, Yixin Gao and Sujun Lyu. The same two individuals also act as directors of Jiangsu Singapore.

    b.   Yixin Gao and Sujun Lyu likewise act as directors of Jiangsu Hong Kong. All shares in Jiangsu Hong Kong are owned by Baoli International (Hong Kong) Trading Co. Ltd, another Hong Kong entity. However, Baoli International's sole director is the same Sujun Lyu.

    c.   Likewise, Yixin Gao and Sujun Lyu act as directors of Jiangsu Management. In addition, Yixin Gao owns 30% of shares in that company.

    d.   Similarly, Yixin Gao and Sujun Lyu act as directors of Spring Sunshine. Again, Yixin Gao owns 30% of shares in it, the rest being held by Baoli Marine Co. Ltd, a British Virgin Islands entity. Although the identities of directors and shareholders of BVI corporations are not publicly available, Plaintiff reasonably anticipates that the same Yixin Gao and Sujun Lyu own shares in it and/or act as its directors.

    e.   Jiangsu Hong Kong, Spring Sunshine and Baoli International share the same company secretary - Synergies Professional Services Ltd.

52.     On information and belief, the Defendants, at least Jiangsu Hong Kong, Jiangsu Singapore and Spring Sunshine, share (and/or shared at all material times) common office space and addresses.  According to the Hong Kong company registry Jiangsu Hong Kong and Spring Sunshine are currently registered at the same Hong Kong address at Unit 1001, 10/F., Edward Wong Tower, 910 Cheung Sha Wan Road, Lai Chi Kok, Kln, Hong Kong (*Exhibit G*).

    a.  The use of shared addresses is particularly evident from the fact that Jiangsu Hong Kong's website (www.jsssc.com/en) and Equasis[2] list another address in mainland China (88 Zhonghua Road, Dongdaemun, Zhangjiagang Free Trade Zone, Jiangsu Province) for Jiangsu Hong Kong, Jiangsu Singapore and Jiangsu Management. All of these Defendants' email addresses belong to the same @jsssc.com domain. All phone numbers listed on the website are Chinese (+86-512 or 0512) (*Exhibit H*);

    b.  The same @jsssc.com email addresses and the same address in mainland China features in Jiangsu Singapore's Introduction materials sent to Plaintiff during the negotiations for the M/V PING MAY charterparty (*Exhibit F*);

    c.  The Introduction materials, which purport to relate specifically to Jiangsu Singapore, also use the telephone number +86 512 56359811 and the fax number +86 512 58382118, each of which is also listed as a contact number for Jiangsu Hong Kong on Jiangsu Hong Kong's website (*Exhibit H*);

    d.  M/V SPRING SUNSHINE's previous registered owner, Hua Yang International Marine Transportation Co. Ltd, had the exact same business address at 88

---

[2] Equasis is an online database which helps in promoting exchange of information and transparency in the shipping industry. See www.equasis.org.

Zhonghua Road as Jiangsu Hong Kong, Jiangsu Singapore and Jiangsu Management (*Exhibit I*)

53. On information and belief, the defendants, or at least Jiangsu Singapore and Jiangsu Hong Kong, share overlapping personnel. According to information in open and publicly available social media accounts on Facebook and LinkedIn, several individuals identifying themselves as employees of either Jiangsu Singapore or Jiangsu Hong Kong simultaneously list the other company as their employer. For example:

a. Captain Zhao Baoan, who is a director of Jiangsu Singapore, lists on his Facebook page that he is a "Shipping Manager" at "Jiangsu Steamship Co. Ltd" (i.e. Jiangsu Hong Kong) (*Exhibit J*);

b. An employee named Chen Chen appears to be an employee of one or both of Jiangsu Singapore and Jiangsu Hong Kong. Chen Chen's LinkedIn profile states that he/she works at a "*Handy chartering desk at JIANGSU STEAMSHIP COMPANY LIMITED*" (i.e. Jiangsu Hong Kong). However, he/she lists his/her current employer as "Jiangsu Steamship Pte Ltd" (i.e. Jiangsu Singapore) (*Exhibit K*);

c. Ms Crystal Xu appears to be an employee for Jiangsu Singapore and is listed as such on her LinkedIn profile. However, her biography on her profile states that she "*moved to Singapore to join JSSSC as senior chartering manager specially for **own** fleet chartering…*" (our emphasis) (*Exhibit K*). The tenor of this message is clear. Ms Xu, who works for Jiangsu Singapore, understands her role as performing chartering operations for her "*own*" company fleet, being the fleet owned by the Defendants.

54.     On information and belief, neither Jiangsu Singapore, nor Jiangsu Management, nor Spring Sunshine exercise, or exercised, any independent discretion. Spring Sunshine is a one-ship company with no known independent business operations, personnel or website of its own and is entirely controlled by the Jiangsu group. Its name matches its only asset, the M/V SPRING SUNSHINE – an obvious sign of a single-vessel shell company. Similar corporate arrangements exist for other vessels in the fleet of Jiangsu Hong Kong (e.g. Spring Glory Shipping Ltd being named the registered owner of the M/V SPRING GLORY).

55.     Jiangsu Singapore and Jiangsu Management are expressly called "departments" or "branch offices" of Jiangsu Hong Kong in various different contexts, as follows:

    a.  This wording is used to refer to the various corporate entities on the website of Jiangsu Hong Kong (*Exhibit L*);

    b.  This same nomenclature is used by one of directors of Jiangsu Singapore, Capt. Zhao Baoan, who referred multiple times on Facebook to Jiangsu Singapore (of which he is a director) as a "department" of Jiangsu Hong Kong (*Exhibit J*);

    c.  Further, in Capt. Zhao Baoan's Facebook posts, he expressly refers to the opening of "branch office" in Singapore. Capt. Zhao Baoan goes as far as to say that his title is the "General Manager of Singapore Branch" and specifically invites candidates to apply for a job on the basis that the Singapore entity is a "branch office". That is clearly not the same as a corporate entity holding itself out as an independent entity to other companies within the Jiangsu group. When a business is identified as being a "branch" or a "department" of another business, the commercial – as well as legal – meaning is that the "branch"/"department" is a part of the other entity, rather than truly distinct.

d.  In a news article dated 8 April 2016, the same Captain Zhao Baoan is specifically quoted as stating that Jiangsu Hong Kong is moving a chartering "team" to Singapore and promoting Jiangsu Singapore by touting Jiangsu Hong Kong's "key strengths as a shipping company," i.e. a single business enterprise (*Exhibit M*).

56.  An almost identical list of vessels is also present on Jiangsu Hong Kong's website as belonging to Jiangsu Hong Kong and/or managed by Jiangsu Management (*Exhibit N*).

57.  However, according to Equasis and information available from Protection and Indemnity sources, each of these "Spring" ships is owned by a one-ship company (*Exhibit O*). In relation to the majority of them (including M/V SPRING SUNSHINE) Jiangsu Management acts as the commercial and ship manager, while neither Jiangsu Singapore nor Jiangsu Hong Kong are in fact listed as holding title or any kind of interest in these vessels. This strongly suggests that Jiangsu Singapore uses property owned by, inter alia, Spring Sunshine and operated by Jiangsu Management, as its own.

58.  In addition, Jiangsu Singapore regularly uses Jiangsu Hong Kong's logotype (the silhouette of a bull standing on the globe) in its commercial documents, such as letters of introduction and hire statements of account sent to third parties, such as Plaintiff (*Exhibits F, P*).

59.  Third-party commercial partners do not treat Jiangsu Hong Kong and Jiangsu Singapore as separate entities. For example, shipbroking firm Jarsin Shipbrokers' website lists Jiangsu Hong Kong as one of Jarsin's partners, but indicates Singapore as Jiangsu Hong Kong's location (*Exhibit Q*). Therefore, Defendants represent to the market that they operate as a single shipping entity consisting of a fleet of vessels, and not as individual business entities.

60.     On information and belief, there has also been overlap relating to financing arrangements pertaining to the vessels in Jiangsu Hong Kong's fleet. For example, as follows from a deed of cross-collateralization dated October 20, 2011, Spring Sunshine mortgaged its only vessel to China Development Bank Corporation (*Exhibit R*). The same was done by several other one-ship companies controlled by Jiangsu Hong Kong in relation to their vessels (*Exhibit R*). On each of those mortgages (including the Spring Sunshine mortgage), a director of Jiangsu Hong Kong and a director/shareholder of Jiangsu Singapore, Yixin Gao, acted as a "chargor" to secure the mortgagees' obligations.

61.     In addition, the guarantor under all these mortgages was Jiangsu Huaxi Group Co. Ltd (*Exhibit R*). This entity fully owns Jiangsu Hong Kong through two other companies – Jiangyin Huaxi Iron & Steel Co. Ltd and Baoli International (Hong Kong) Trading Co. Ltd. Discovery would be needed to determine the extent of further financial overlap such as cross-mortgaging and/or any shared accounts for hire or freight payments.

62.     In light of the foregoing, and on information and belief, the Defendants completely fail to observe corporate formalities and keep their operations separate.

63.     It therefore is clear from the documents available that the Defendants act as alter egos of each other and as a single business enterprise.

### Abuse of the Corporate Form by Misrepresentation

64.     On information and belief, Jiangsu Singapore made fraudulent or negligent misrepresentations to Plaintiff that Jiangsu Singapore was a ship-owning entity with its own bulk fleet. This constitutes an abuse of the Defendants' corporate form and wrongdoing against Plaintiff, who relied on the misrepresentation when entering into the Charterparty.

65.     On or about April 30, 2020 – a day before the M/V PING MAY Charterparty was concluded, persons acting on behalf of Jiangsu Singapore sent to Plaintiff a letter of introduction describing Jiangsu Singapore's capabilities. Plaintiff had previously specifically requested this letter as evidence of its fleet, since Jiangsu Singapore was a new client. The contents of the Introductory letter are more fully described above (see paragraph 44).

66.     Jiangsu Singapore's Introduction was used specifically to induce Plaintiff to enter into the Charterparty by demonstrating the representor's creditworthiness, standing in the industry and, significantly, available assets that could serve as security for claims.

67.     It was reasonable for Plaintiff to rely on the Introduction. It was headed with Jiangsu Singapore's full style, it was sent by a broker in response to a specific request for details on Jiangsu Singapore's asset position and it was sent in the context of advanced discussions to fix the Vessel to Jiangsu Singapore. Plaintiff did rely on these misrepresentations in deciding to fix the Charterparty with Jiangsu in circumstances where two other potential charterers were available.

68.     By intentionally misrepresenting and/or misleading the material fact of the identity or identities of the true owners of the vessels in question to the Plaintiff, and by intentionally misrepresenting and/or misleading the corresponding financial strength of Jiangsu Singapore, Jiangsu Singapore and other Defendants abused the corporate form, committed a wrongdoing against Plaintiff and must now be treated as a single entity for the purposes of the requested attachment.

**Rule B Allegations**

**Defendants cannot be found within this District**

69.     After a diligent search, and as is further set forth in the accompanying Declaration of Peter B. Sloss that the Defendants cannot be found within the District, Plaintiff respectfully submits that neither Jiangsu Hong Kong, nor Jiangsu Singapore, nor Jiangsu Management, nor Spring Sunshine can be found within this District for purposes of Rule B of the Supplemental Rules for Admiralty and Maritime Claims or Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rule B").

70.     Diligent searches of the website maintained by the Louisiana Secretary of State, of the internet Whitepages directory, and a general internet search via Google and Lexis did not identify any of the Defendants as:

    a.   Ever being registered or authorized to transact business in the State of Louisiana;

    b.   Being incorporated or registered in the State of Louisiana;

    c.   Having appointed an agent for service of process in this District; or

    d.   Having any other presence in this District.

71.     Further, Plaintiff is unaware of any of the Defendants having any general or managing agents in this District.

72.     Accordingly, Defendants cannot be "found" within this District for the purpose of an attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

**Defendants' assets may be found within this District**

73.     On information and belief, Defendants have or soon will have property in this District consisting of the M/V SPRING SUNSHINE.

74.     On information and belief, the M/V SPRING SUNSHINE has an ETA of October 31, 2020 for a berth to-be-determined on the Lower Mississippi River within the Eastern District of Louisiana.

75.     The M/V SPRING SUNSHINE's registered owner is defendant Spring Sunshine Shipping Ltd.  Further, for all of the aforesaid reasons, on information and belief, the M/V SPRING SUNSHINE's true or ultimate beneficial owner is Jiangsu Singapore, and defendant Spring Sunshine held the title to the M/V SPRING SUNSHINE as a mere agent for Jiangsu Singapore. Further and alternatively, all four Defendants are merely alter egos of each other and act as a single business enterprise.

76.     Accordingly, Plaintiff respectfully seeks to attach the M/V SPRING SUNSHINE pursuant to Supplemental Rule B.

### AS AND FOR A FIRST CAUSE OF ACTION – ATTACHMENT OF THE SPRING SUNSHINE

77.     At all material times, Plaintiff was the owner of the M/V PING MAY under a time charter party with Jiangsu Singapore, which constituted a maritime contract.

78.     By failing to redeliver M/V PING MAY on time, Jiangsu Singapore breached its maritime contractual obligations.

79.     For the reasons aforesaid, Jiangsu Hong Kong, Jiangsu Management and Spring Sunshine are Jiangsu Singapore's alter egos and thereby liable for the same breached maritime obligations.

80.     Jiangsu Singapore's breach caused Plaintiff to suffer damages in amount equal to, at least, USD5,668,042.15 (for its principal claim), plus interest, attorney's fees and costs (which are recoverable under English law, as provided for in the Charterparty).  Plaintiff reasonably estimates that, during the pendency of the underlying dispute, interest equal to at least

USD400,000 will accrue, and attorney's fees and other legal costs equal to at least USD500,000 will accrue.

81.     Therefore, Plaintiff reasonably estimates its total, recoverable damages as being equal to, at least, USD6,568,042.15.

82.     Plaintiff expressly reserves all of its rights to have the underlying merits of its claims resolved by arbitration in London. Plaintiff brings this action to obtain quasi in rem jurisdiction over Defendants, and security for the enforcement of any resulting awards and/or judgments which it may obtain against any of the Defendants pursuant to 9 U.S.C. §8.

83.     None of the Defendants can be found within this District, but their property (namely the M/V SPRING SUNSHINE) may, or soon will be, found within this District.

84.     Plaintiff is accordingly entitled to attach Defendants' property (namely the M/V SPRING SUNSHINE) within this District.

## PRAYER FOR RELIEF

85.     Plaintiff seeks an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure attaching any and all assets of Defendants up to the amount of USD6,568,042.15 for the purpose of obtaining personal jurisdiction over Defendants and to secure the claims being pursued in the London arbitration more fully described above pursuant to 9 U.S.C. §8.

**WHEREFORE**, Plaintiff prays:

(A) That process in due form of law issue against Defendants Jiangsu Steamship Pte Ltd, Jiangsu Steamship Co. Ltd, Jiangsu Huaxi Ocean Shipping Management Co. Ltd and Spring

Sunshine Shipping Ltd citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

(B) That since Defendants cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching all property, tangible or intangible, in whatever form, in the amount of USD6,568,042.15 to establish personal jurisdiction over the Defendants and to secure Plaintiff's underlying claims pursuant to 9 U.S.C. §8, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rules B and E, answer the matters alleged in the Verified Complaint;

(C) That this Court retain jurisdiction over this matter through the entry of any judgment or recognizing, confirming or enforcing any award or judgment associated with claims currently pending, or which may be asserted in the future, as against any of the Defendants and in favor of Plaintiff; and

(D) That Plaintiff may have such other, further and different relief as the Court may deem just and proper in law and equity.

Respectfully Submitted:

**MURPHY, ROGERS, SLOSS, GAMBEL & TOMPKINS**

/s/ *Peter B. Sloss*

Peter B. Sloss (#17142)
Peter B. Tompkins (#17832)
John H. Musser, V (#22545)
psloss@mrsnola.com
ptompkins@mrsnola.com
jmusser@mrsnola.com
701 Poydras Street, Suite 400
New Orleans, LA 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-5574

**ATTORNEYS    FOR    PING    MAY MARITIME LLC**

**OF COUNSEL:**

**ZEILER FLOYD ZADKOVICH (US) LLP**
Edward W. Floyd  ed.floyd@zeilerfloydzad.com
Luke F. Zadkovich luke.zadkovich@zeilerfloydzad.com
Timothy S. McGovern tim.mcgovern@zeilerfloydzad.com
Telephone: (917) 999 - 6914
215 Park Ave. South, 11th Floor
New York, New York 10003
*Application for Pro Hac Vice admission forthcoming*

**VERIFICATION**
**<u>DECLARATION OF PETER B. SLOSS</u>**

Pursuant to 28 U.S.C. § 1746, this Declaration is executed by Peter B. Sloss, an attorney acting for Plaintiff, Ping May Maritime LLC:

I, Peter B. Sloss, declare under penalty of perjury:

1.  I am an attorney at law, admitted to practice in the State of Louisiana, as well as before the United States District Courts for the Eastern, Middle and Western Districts of Louisiana. I am a Director of the firm of Murphy, Rogers, Sloss, Gambel & Tompkins.

2.  I have read the foregoing Verified Complaint and know the contents therefore and that the same are true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

3.  The source of my information is documents, records, and other information supplied by the Plaintiff and/or its representatives related to this matter, and the Defendants herein, which I have reviewed.

4.  This verification is made by me because Plaintiff is a foreign corporation with its principal place of business in a foreign country.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:       October 30, 2020

**MURPHY, ROGERS, SLOSS, GAMBEL
 & TOMPKINS**

_____

Peter B. Sloss
psloss@mrsnola.com
701 Poydras Street, Suite 400
New Orleans, LA 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-557
4823-5863-4704, v. 1

**VERIFICATION**
**DECLARATION OF PETER B. SLOSS**

Pursuant to 28 U.S.C. § 1746, this Declaration is executed by Peter B. Sloss, an attorney acting for Plaintiff, Ping May Maritime LLC:

I, Peter B. Sloss, declare under penalty of perjury:

1.   I am an attorney at law, admitted to practice in the State of Louisiana, as well as before the United States District Courts for the Eastern, Middle and Western Districts of Louisiana. I am a Director of the firm of Murphy, Rogers, Sloss, Gambel & Tompkins.

2.   I have read the foregoing Verified Complaint and know the contents therefore and that the same are true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

3.   The source of my information is documents, records, and other information supplied by the Plaintiff and/or its representatives related to this matter, and the Defendants herein, which I have reviewed.

4.   This verification is made by me because Plaintiff is a foreign corporation with its principal place of business in a foreign country.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:        October 30, 2020

**MURPHY, ROGERS, SLOSS, GAMBEL & TOMPKINS**

Peter B. Sloss
psloss@mrsnola.com
701 Poydras Street, Suite 400
New Orleans, LA 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-557
4833-8800-2256, v. 1